IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| John Edward Parker, Jr., | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 1:22-cv-534 (AJT/JFA) |
| | ) | |
| Harold W. Clarke, *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## MEMORANDUM OPINION and ORDER

John Edward Parker, Jr. ("Parker" or "Plaintiff"), a Virginia inmate proceeding *pro se*,
filed a civil rights action under 42 U.S.C. § 1983, alleging Harold W. Clarke, Director of the
Virginia Department of Corrections, Brian Moran, Secretary of Public Safety & Homeland
Security, and Tonya D. Chapman, Chair, Virginia Parole Board, violated his rights under several
Virginia statutes to re-entry or transition planning. [Doc. No. 1] at 4–9. The defendants have filed
a Motion to Dismiss (the "Motion") and a supporting brief. [Doc. Nos. 15, 16]. Parker has been
advised of his right to file responsive materials pursuant to *Roseboro v. Garrison*, 528 F.2d 309
(4th Cir. 1975) [Doc. No. 17], but has no done so.[1] Accordingly, the Motion is now ripe for
disposition. For the following reasons, the defendants' Motion must be granted.

### I. The Complaint

The complaint alleges that Plaintiff's release on parole was "rushed" by St. Brides
Correctional Center and the defendants, and that the "rush" denied him the assistance of the

---

[1] After the Court denied Plaintiff's motion for the appointment of counsel, [Doc. No. 22], Plaintiff filed a notice of
appeal on April 28, 2023 [Doc. No. 24]. The Court entered a stay on August 11, 2023, [Doc. No. 32], which stayed
this matter until the Fourth Circuit considered the appeal. On January 3, 2024, the Fourth Circuit dismissed the appeal,
remanded this action to this Court, and issued its mandate. [Doc. Nos. 33, 34].

mandatory Reentry Planning Program ("RPP"). [Doc. No. 1] at 4. He further contends that defendants' failure to provide him the assistance due him under the RPP "forced [Plaintiff] to participate under duress ... with unwanted criminal behavior to survive in feeding, clothing, and shelter in place in the height of the COVID-19 Pandemic." *Id.* He further alleges that it was the defendants' "responsibility," under various statutes, "to ensure each offender will have a successful reentry back into their communities." Plaintiff relies on the following five statutes:

(1) Virginia Code § 53.1-32.1(A), regarding classification, program assignments, and mandatory participation, which states:

> The Director shall maintain a system of classification which (i) evaluates all prisoners according to background, aptitude, education, and risk and (ii) based on an assessment of needs, determines appropriate program assignments including career and technical education, work activities and employment, academic activities which at a minimum meet the requirements of § 66-13.1, counseling, alcohol and substance abuse treatment, and such related activities as may be necessary to assist prisoners in the successful transition to free society and gainful employment.

(2) Virginia Code § 53.1-32.2, regarding reentry planning, which states:

> The Department shall develop and implement, in cooperation with and taking into account the individual needs and willingness to participate of the inmate, a comprehensive reentry plan for each person committed to the supervision of the Department, as soon as practicable, considering the prisoner's anticipated release date. Such plan shall identify educational, vocational, therapeutic, and other programs necessary to prepare the person for successful transition from prison to society upon the person's discharge and shall include mentor pairing to the extent possible. The Department shall coordinate any reentry programs provided through the Department pursuant to the reentry plan with any other reentry or other relevant programs offered by any public or private organization or entity at the local, state, or federal level, which are also included in the plan.

(3) Virginia Code § 53.1-155(C), regarding pre-release investigation and transition assistance, which states:

> ...

2

Notwithstanding the provisions of subsection A, if a physical or mental examination of a prisoner eligible for parole has been conducted within the last twelve months, and the prisoner has not required medical or psychiatric treatment within a like period while incarcerated, the prisoner may be released on parole by the Parole Board directly from a local correctional facility.

The Department shall offer each prisoner to be released on parole or under mandatory release who has been sentenced to serve a term of imprisonment of at least three years the opportunity to participate in a transition program within six months of such prisoner's projected or mandatory release date. The program shall include advice for job training opportunities, recommendations for living a law-abiding life, and financial literacy information. The Secretary of Public Safety and Homeland Security shall prescribe guidelines to govern these programs.

(4) Virginia Code § 53.1-179, regarding authorized services, which states:

The Director may purchase temporary room and board and training, counseling and rehabilitation services for probationers and parolees whom the Director deems to be in need of and eligible for such benefits and services. Implementation of this provision shall conform with the requirements of all locally-adopted zoning regulations.

(5) Virginia Code § 2.2-221.1, regarding coordination of the reentry system, which states:

The Secretary of Public Safety and Homeland Security shall establish an integrated system for coordinating the planning and provision of offender transitional and reentry services among and between state, local, and nonprofit agencies in order to prepare inmates for successful transition into their communities upon release from incarceration and for improving opportunities for treatment, employment, and housing while on subsequent probation, parole, or post-release supervision.

It is the intent of the General Assembly that funds used for the purposes of this section be leveraged to the fullest extent possible and that direct transitional and reentry employment and housing assistance for offenders be provided in the most cost effective means possible, including through agreements with local nonprofit pre- and post-release service organizations.

## II.  Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

3

(quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible if "the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Nemer Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). A plaintiff must therefore allege facts in support of each element of each claim he or she raises; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Iqbal*, 566 U.S. at 678.

### III. Analysis

The defendants argue that Plaintiff has failed to provide any facts that establish that any of the three defendants had any personal involvement in the alleged constitutional violation because Plaintiff has not shown how any of the defendants "rushed" his release, or failed to provide him with re-entry assistance while he was at St. Brides Correctional Center. *See* [Doc. No. 16] at 2. Further, defendant Chapman asserts "quasi-judicial immunity" based on her position as a member of the parole board, *id.* at 5–6, and defendant Moran asserts sovereign immunity based on his position as Secretary of Public Safety and Homeland Security, *id.* at 3–4.[2] Plaintiff has not filed a response.[3]

The law is well settled that "inmates have no constitutional right to rehabilitation or educational programs." *Garrett v. Angelone*, 940 F. Supp. 933, 942 (W.D. Va. 1996), *aff'd*, 107 F.3d 865 (4th Cir. 1997) (citing *Rhodes v. Chapman*, 452 U.S. 337, 348 (1981)). Further, "there is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the

---

[2] Specifically, Plaintiff alleges that defendant Chapman was the Chairman of the Parole Board when Plaintiff was released on parole. As the defendants point out, [Doc. No. 16] at 5–6, because the Virginia Parole Board exercises a quasi-judicial function, the Fourth Circuit has held that members of the Virginia Parole Board are immune from suits for damages under § 1983. *See, e.g., Bowman v. Knott*, 267 F. App'x 214, 214 (4th Cir. 2008) (unpublished); *Franklin v. Shields*, 569 F.2d 784, 798 (4th Cir. 1977); *Pope v. Chew*, 521 F.2d 400, 405 (4th Cir. 1975).
[3] Plaintiff has not alleged when he was granted or released on parole, which may also present a statute of limitations issue. Plaintiff should address this issue in an amended complaint should he choose to file one.

absence of conditions that rise to a violation of the Eighth Amendment." *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982); *cf. Gardner v. Oslin*, No. 7:12-cv-108, 2012 U.S. Dist. LEXIS 73515, *4-5 (May 29, 2012) (noting the "vast discretion" provided by Virginia Code §§ 53.1-32.1 and 32.2 to prison officials in managing prison resources). As the defendants explain, Plaintiff has alleged, at best, negligence and violations of state law. [Doc. No. 16] at 3; *see White by White v. Chambliss*, 112 F.3d 731, 738 (4th Cir. 1997) (explaining § 1983 claims are an improper avenue to seek compliance with state law); *see also Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); *Snider Int'l Corp. v. Town of Forest Heights*, 739 F.3d 140, 145 (4th Cir. 2014) ("Conduct violating state law without violating federal law will not give rise to a § 1983 claim.").

The complaint alleges, in a conclusory fashion, that the defendants were responsible for the failure of the staff at St. Brides for allegedly not providing him with RPP. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). To state a cause of action under § 1983, a plaintiff must allege facts indicating that he was deprived of rights guaranteed by the Constitution or laws of the United States and that the alleged deprivation resulted from conduct committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988). He must allege facts to support a claim that a person had personal knowledge of and involvement in the alleged violations of his constitutional rights for the action to proceed against that person as a defendant.

> To establish personal liability under § 1983 ... the plaintiff must "affirmatively show[ ] that the official charged acted personally in the deprivation of the plaintiff's rights." That is, the official's "own individual actions" must have "violated the Constitution." Importantly, mere knowledge of such a deprivation does not suffice.

*Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) (second alteration in original) (citations omitted). Plaintiff has not alleged such facts here, and his summary allegation that his parole proceedings were "rushed" does not meet that standard.

Even assuming that Plaintiff experienced an injury cognizable under § 1983, and that he asserts *respondeat superior* liability on the part of any defendants, he has failed to allege facts that make that claim plausible. In that regard, the Fourth Circuit has set forth three elements that must be met to establish supervisory liability under § 1983:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). Plaintiff's complaint does not include any factual allegations that satisfy any of the three elements set out in *Shaw*.

Because the Plaintiff is a prisoner proceeding *pro se*, he will be allowed to amend his complaint to cure the deficiencies noted.[4]

Accordingly, it is hereby

**ORDERED** that the defendants' Motion to Dismiss, [Doc. No. 15], be, and the same hereby is, GRANTED; and it is further

**ORDERED** that Plaintiff is given leave to file an amended complaint within thirty (30) days of the date of this Order using the enclosed standardized § 1983 complaint form on which he must reallege all the facts from his complaint and add additional factual allegations to cure the deficiencies noted in this Order. The deficiencies include when he was granted parole, when he

---

[4] The defendants have not argued amendment would be futile.

6

was released, the constitutional right or rights he alleges were violated, and the specific action or actions of each defendant, and how those actions violated specific constitutional rights. He must also include his civil action number, **1:22-cv-534 (AJT/JFA)**, on the first page of his amended complaint. Plaintiff is advised that **this amended complaint will serve as the sole complaint in this civil action**; and it is further

**ORDERED** that plaintiff's failure to comply with any part of this Order within thirty (30) days from the entry of this Order, or failure to notify the Court immediately upon being transferred, released, or otherwise relocated, may result in the dismissal of this complaint pursuant to Federal Rule of Civil Procedure 41(b).

The Clerk is directed to send a copy of this Order and a § 1983 form to Plaintiff.


February 22, 2024
Alexandria, Virginia


Anthony J. Trenga
Senior United States District Judge